**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SMARTDISK CORPORATION, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2-05-CV-101 (TJW) |
| | § | |
| ARCHOS S.A. and ARCHOS INC., | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

After considering the submissions and the arguments of counsel, the court issues the

following order concerning the claim construction issues:

**I.     Introduction**

Plaintiff SmartDisk Corporation accuses Defendants Archos, S.A. and Archos Inc. of

infringing two United States patents, U.S. Patent No. 6,658,202 ("the '202 patent") entitled "Portable

Data Transfer and Mass Storage Device for Removable Memory Modules," and U.S. Patent No.

6,987,927 ("the '927 patent") entitled "Enhanced Digital Data Collector for Removable Memory

Modules."   The '927 patent resulted from a continuation-in-part application based on the patent

application resulting in the '202 patent.   The '927 and '202 patents generally disclose a method and

apparatus for transferring data between a flash memory module used in a digital camera and a mass

storage device.

**II.     Law Governing Claim Construction**

"A claim in a patent provides the metes and bounds of the right which the patent confers on

the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc.*

*v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).   Claim construction is an

issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71

(Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history.  *Markman*, 52 F.3d at 979.  Under the patent law, the specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention.  A patent's claims must be read in view of the specification, of which they are a part.  *Id*.  For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims.  *Id*.  "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's claims.  Otherwise, there would be no need for claims.  *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc).  The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1388 (Fed. Cir. 1992).  And, although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments.  *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  In *Phillips*, the court set forth several guideposts that courts should follow when construing claims.  In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right

2

to exclude." 415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To that end, the words used in a claim are generally given their ordinary and customary meaning.  *Id*.  The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Id*. at 1313.  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention.  The patent is addressed to and intended to be read by others skilled in the particular art.  *Id*.

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id*.  Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument."  *Id*. at 1315 (*quoting Markman*, 52 F.3d at 978).  Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims.  *Id*. at 1314-17.  As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims."  *Bates v. Coe*, 98 U.S. 31, 38 (1878).  In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim

> language and most naturally aligns with the patent's description of the invention will
> be, in the end, the correct construction.

Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. The prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Phillips*, 415 F.3d at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id*. Nevertheless, the prosecution history is intrinsic evidence. That evidence is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Id*. at 1319-24. The approach suggested by *Texas Digital*–the assignment of a limited role to the specification–was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term. *Id*. at 1320-21. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of the claim terms within the context of

4

the patent." *Id*. at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id*. What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented. *Id*. The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word. *Id*. at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id*. at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant. The court now turns to a discussion of the patents-in-suit and the disputed claim terms.

## III.   Discussion

The '202 and '927 patents generally describe a method and portable device which allows digital pictures stored on a digital camera's memory to be transferred to the patented device's hard drive for storage. The user can then reuse the camera's memory to take additional photographs, and the pictures can be transferred from the patented device to the user's computer at a later time. The patented device interfaces with the camera's memory module and with the user's computer to perform the transfer operations.

In general, the patented device contains a mass storage device, such as a commercially available hard drive, for storing the pictures downloaded from the camera's memory. There are also

5

input ports for connecting to the flash memory module, and output ports for connecting to the user's computer.  The patented device also contains processing circuitry, which facilitates the transfer of image data.

The claim language in the '202 patent and the '927 patent use similar, if not identical, terms. Therefore, the court's construction, as set forth below, applies to both patents-in-suit.

**1.      at least one control key for initiating the predetermined operations relating to said digital camera memory module[1]**

The plaintiff proposes a construction of  "not less than one key for initiating predetermined operations relating to said digital camera memory module."  However, the main dispute involves the term "control key."  Instead of proposing a construction for the entire disputed phrase, the defendants only propose a construction for "control key" to mean "a one-touch key that can be manually depressed by a user and that, in response to a single touch, causes the repository device to copy, or erase or reformat, a flash memory module."  To support their proposed construction, the defendants cite to examples of "control keys" in the specification.  The claim phrase is broader than the examples of the preferred embodiment cited by the defendants; nevertheless, the terms are readily understandable and the court concludes that this phrase requires no construction.

**2.      at least one user interface key embodied in said housing**

The plaintiff proposes a construction of "not less than one user interface key embodied in said housing."  The defendants propose "at least one key that is permanently attached to the housing and that can be manually depressed."  The defendants again cite only to a preferred embodiment in

---

[1]The corresponding phrases are "at least one control key for initiating an operation relating to the data stored in said digital flash memory module;" and "at least one control key for initiating predetermined operations relating to said digital memory module."

the specification to support its incorrect contention that a "key" can be "manually depressed" by the user.  However, the plaintiff does agree with the defendants that a "key" attached via cable would not satisfy the limitation of "embodied in said housing."  Accordingly, the court construes "at least one user interface key embodied in said housing" as "at least one user interface key permanently attached to the housing."

> **3.**    **a copy key for initiating the copying of the contents of a memory of a digital camera containing picture image data previously captured by said digital camera from said memory of said digital camera to said mass storage device**

The plaintiff contends that no construction is needed.  The defendants propose "a user interface key that is an exclusive copy button, which is only used for transferring the contents of a memory of a digital camera to the repository device."  The defendants cite to the prosecution history and an interview summary by the examiner stating that the examiner "[d]iscussed an amendment to the claims to include the feature of having an exclusive, copy button only used for transferring images from the camera card to the system/collector etc."  '927 Prosecution History, August 2, 2005 Interview Summary.  The plaintiff argues that the statement does not refer to an agreement between the patentee and the examiner.  The plaintiff also argues that the statement does not show conclusively that the discussion occurred prior to the patentee's amendment on July 15, 2005 because the examiner summarized interviews that occurred on July 14, 2005 (prior to amendment) and July 19, 2005 (after amendment).  After careful examination of the prosecution history, the court agrees with the defendants that the patentee limited its claims during prosecution of the patent as stated in the examiner's summary.  Accordingly, the court construes the phrase as "an exclusive copy button used only for copying the contents of a memory of a digital camera containing picture image data previously captured by the digital camera to the mass storage device."

### 4.      Port/Interface

The plaintiff proposes that "port" means "a connection channel" and that "interface" means "the hardware, software, and/or firmware that allows the exchange of data between devices."  The defendants propose "a data communication interface" as the construction for both terms because they contend that "port" and "interface" are identical.  To support their contention, the defendants cite to portions of the specification where "port" and "interface" have been used interchangeably.  However, in the claims, "port" and "interface" are used separately.  *E.g.*, '202 patent, claim 1.  Therefore, they are presumed to mean different things. *See Innova/Pure Water, Inc.*, 381 F.3d at 1119.  Furthermore, one of ordinary skill in the art would understand "port" to be a type of "interface" (e.g.,  a "parallel port" is a type of "interface").  Accordingly, "port" means "the physical connector that allows for the connection and data exchange between devices" and "interface" means "the hardware that allows for data exchange between devices."

### 5.      Modifying

This term only appears in Claim 20 of the '202 patent.  The plaintiff proposes that the term means "altering or changing."  The defendants propose "erasing or reformatting."  The defendants argue that the claim specifically refers to "modifying" the memory module to prepare it for reuse.  The defendants then point to the claims and portions of the specification that describe erasing or reformatting as ways to prepare a module for reuse.  However, erasing or reformatting are not the only ways to prepare a module for reuse.  Accordingly, the court concludes that this term requires no construction.

6.     **for use in transferring data between a flash memory module and a user's computer**[2]

This phrase appears in the preamble of several claims in both patents.  The parties agree that this phrase should be considered a limitation of the claims.  The plaintiff, however, contends that the phrase requires no construction.  To the extent it does need construction, the plaintiff proposes that the phrase means "the claimed device must be able to transfer data between a flash memory module and a user's computer."  The defendants propose "the *principal* functionality of the claimed device is to transfer data between a flash memory module and a computer."  The main dispute is whether this phrase limits the claim to a  "*principal* functionality."  The defendants cite to the prosecution history where the patentee added this phrase to distinguish prior art.  Although the phrase was added during prosecution, nothing in the prosecution history states that a "principal functionality" limitation was also added.  Accordingly, the court concludes that this phrase requires no construction and rejects the defendants' proposed limitations.

7.     **digital camera picture image data transfer and repository device**[3]

This phrase appears in the preamble of several of the claims in both patents-in-suit.  The plaintiff contends that this phrase from the preamble should not be read into the claim limitations.  To the extent that it is added as a limitation and needs construction, the plaintiff proposes "a device capable of transferring and storing picture image data from a digital camera."  The defendants propose "an intermediary repository device whose principal functionality is to transfer picture image

---

[2]The corresponding phrases are "For use in transferring data between a removable flash memory module and a user's computer;" "to transfer said image data between a removable flash memory module of a digital camera and a user's computer;" and "For use in transferring data between a digital camera flash memory module and a user's computer."

[3]The corresponding phrase is "digital data transfer and repository device."

9

files from a digital camera flash memory module by temporarily storing them in the repository device preparatory to copying them to a computer, without independent capability to edit, manage or display the stored filed."

The plaintiff agrees that the device is an intermediary device.  Furthermore, the defendants correctly state that the body of the claims derive an antecedent basis from the preamble because the claims refer to the "repository device" described in the preamble.  However, the defendants' proposed construction includes additional limitations not supported by the intrinsic evidence. Accordingly, "digital camera picture image data transfer and repository device" means "an intermediary repository device for storing picture image data from a removable flash memory module of a digital camera and transferring the picture image data to a user's computer."

**8.      a hard disk drive . . . operatively coupled to receive and store[4]**

The plaintiff argues that this phrase does not need construction.  In the alternative, the plaintiff proposes "a hard disk drive … effectively connected to receive and store."  The defendants propose "a hard disk drive that is accessible to receive and temporarily store image files from an inserted flash memory module but is not accessible by the device to edit, manage or display image files that are stored on the hard disk drive."  The defendants' construction again includes additional limitations not supported by the intrinsic evidence.  The court agrees with the plaintiff that the terms used in this phrase are readily understandable and concludes that this phrase requires no construction.

---

[4]The corresponding phrases are "a mass storage device . . . operative coupled to receive and store;" "storing said picture image data in said hard drive;" and "to receive and store said copy of the contents of a memory of a digital camera."

**9.      an LCD display device for displaying data indicative of the picture image data of the flash memory module[5]**

The plaintiff argues that this phrase needs no construction.  In the alternative, the plaintiff proposes "an LCD display screen for displaying data indicative of the picture image data of the flash memory module."  The defendants propose "an LCD display configured to display image data that is stored on a flash memory module but is not configured to display image data that is stored on the hard disk drive."  The defendants' construction includes an additional limitation not supported by the intrinsic evidence.  The court concludes that this phrase requires no construction.

**10.      data transfer circuitry for controlling the transfer of data stored in said digital camera flash memory module inserted into said memory input port to said hard disk drive[6]**

The plaintiff contends that this phrase does not need construction.  To the extent that it needs to be construed, the plaintiff proposes "circuitry for controlling the transfer of data stored in said digital camera flash memory modules inserted into said memory input port to said hard disk drive." The defendants propose "circuitry that can copy files from a digital camera's memory and delete them from the digital camera's memory."  The claim phrase is broader than the limitations from the preferred embodiment cited by the defendants.  Therefore, the court rejects the defendants' proposed limitations.  The court incorporates by reference its construction of "port," and concludes that the

---

[5]The corresponding phrases are "an LCD display device for displaying data indicative of [at least part of] the contents of said [digital] flash memory module;" "a [LCD] display device embodied in said [hand-held] housing for displaying;" "said display is operable to display moving image picture data;" "displaying [moving] picture image data on an LCD display embodied within said repository device;" and "for displaying a user's digital photographs."

[6]The corresponding phrases are "circuitry [contained within said hand-held housing] for controlling the transfer of data stored in said digital [camera flash] memory module [inserted into said memory input port] to said hard disk drive;" and "circuitry embodied in said housing for controlling the transfer of data to and from said mass storage device."

11

balance of the phrase requires no construction.

**11.     for coupling/connectable**

The plaintiff contends that the terms do not need to be construed.  To the extent that a construction is needed, the plaintiff proposes that "coupling" be construed as "connecting" and "connectable" be construed as "capable of being connected."  The defendants propose that both terms be construed as "capable of being placed in data communication."  The court has consistently construed the term "coupled" to mean "directly or indirectly connected."  Accordingly, "for coupling" means "for directly or indirectly connecting."  Furthermore, the court agrees with the plaintiff that "connectable" means "capable of being connected."

**12.     embodied in a housing**

The plaintiff contends that no construction is needed.  To the extent that a construction is needed, the plaintiff proposes "incorporated in a casing which surrounds internal parts of a device." The defendants propose "the claimed device is formed in a single housing and all components are either located in that housing or permanently attached to it."  This phrase does not involve technical terms and can be understood through its plain and ordinary meaning.   It does not require construction.

**13.     a hard disk drive contained within said hand-held housing**

The plaintiff contends that no construction is needed.  The defendants propose "a hard disk drive fixedly or removably located within said housing."  The defendants' proposed construction reads in limitations from the preferred embodiment.  Accordingly, the court agrees with the plaintiff and concludes that this phrase requires no construction.

**14.      at least one of which is not embodied in the housing**

The plaintiff contends that no construction is needed.  The defendants propose "one or more of the flash memory reader, the mass storage device, and the battery are not embodied in the housing."  The court agrees with the plaintiff that the defendants' proposed construction merely reiterates the claim language.  Accordingly, the court concludes that this phrase requires no construction.

**15.      a memory input port sized to receive a digital camera flash memory module[7]**

The plaintiff argues that no construction is needed other than the term "port" as discussed above.  The defendants propose "a memory input port, located within the housing, sized to directly receive a digital flash memory module."  The defendants' proposed construction includes limitations that reiterate claim language or is not supported by the intrinsic record.  Accordingly, the court incorporates by reference its construction of "port", and concludes that the balance of the phrase requires no construction.

**16.      a memory insertion section for receiving a first digital flash memory module, and for receiving a second flash memory module**

 The plaintiff argues that no construction is needed.  The defendants propose "at least two flash memory module slots located in the housing that directly receive first and second flash memory modules."  As in the previous section, the defendants' proposed construction includes limitations that reiterate claim language or is not supported by the intrinsic record.  Accordingly, the court concludes that this phrase requires no construction.

---

[7]The corresponding phrases are "a memory input port for receiving a digital flash memory module;" and "inserting into a memory input port of said repository device a digital camera flash memory module."

17.     **reformatting**

The plaintiff proposes "reinitializing."  The defendants propose "repeating a formatting operation to prepare a particular memory module for reuse."  The defendants agree that, according to the customary usage in the computer field, "reinitializing" is the same thing as "reformatting." The plaintiff does not object to the defendants' general proposal.  Accordingly, "reformatting" means "reinitializing a particular memory module for reuse."

18.     **a housing of a size to be held in the palm of a user's hand[8]**

The defendants contend that the phrase is indefinite because it has no discernible meaning in light of the prosecution history.  The court disagrees and finds that the phrase, as written and in the context of the whole patent, can be understood by one of ordinary skill in the art.  *See In re Marosi*, 710 F.2d 799 (Fed. Cir. 1983); *Bancorp Services, L.L.C .v. Hartford Life Ins. Co.*, 359 F.3d 1367 (Fed. Cir. 2004).  The phrase requires no construction and the court rejects the defendants' indefiniteness argument.

19.     **receiving a command for performing an operation with said picture from image data**

The defendants contend that the phrase is indefinite because it is incomprehensible and the specification fails to provide meaning to this phrase.  The court disagrees and finds that the phrase, as written and in the context of the whole patent, can be understood by one of ordinary skill in the art.  Accordingly, the phrase requires no construction and the defendants' indefiniteness argument is rejected.

_____

[8]The corresponding phrase is "housing which can be comfortably held in a user's palm."

**20.     a housing connectable to both a user's notebook or desktop computer**

This phrase only appears in claim 13 of the '202 patent.  The defendants contend that the phrase is indefinite because it is incomprehensible and the specification fails to provide meaning to this phrase.  The court disagrees and finds that the phrase, read in the context of the whole patent, can be understood by one of ordinary skill in the art to refer to a connection to a flash memory module and to a user's computer.  Accordingly, the defendants' indefiniteness argument is rejected and the phrase is construed to mean "a housing connectable to both a removable flash memory module and a user's notebook or desktop computer."  The court incorporates by reference its definition of "connectable."

**21.     reading the command from a user interface**

This phrase only appears in claim 35 of the '927 patent.  The defendants contend that the phrase is indefinite because it is incomprehensible and the specification fails to provide meaning to this phrase.  The court disagrees and finds one of ordinary skill in the art would understand the phrase to refer to a command initiated by the user.  Accordingly, the defendants' indefiniteness argument is rejected and the phrase is construed to mean "reading a command initiated by a user through a user interface."

**22.     clocking circuitry for a generating time related signal, said repository device for storing time related data associated with picture image data**

This phrase only appears in claim 20 of the '927 patent.  The defendants contend that the phrase is indefinite because it is incomprehensible and the specification fails to provide meaning for to this phrase.  The court disagrees and finds that one of ordinary skill in the art would understand the phrase to refer to clocks and time related signals associated with picture image data.

15

Accordingly, the defendants' indefiniteness argument is rejected and the phrase means "clocking circuitry for generating a time related signal, said repository device for storing time related data associated with picture image data."

SIGNED this 28th day of November, 2006.

T. JOHN WARD
UNITED STATES DISTRICT JUDGE